Filed 12/13/22  P. v. Wyres CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077766 |
| v. | (Super. Ct. No. ICR9094) |
| TROY WYRES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Reversed and remanded with directions.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Lynne McGinnis, and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

In 1985, defendant and appellant Troy Wyres pleaded guilty to second degree murder with the personal use of a knife (Pen. Code,[1] §§ 187, 12022, subd. (b)), and the trial court sentenced defendant to 15 years to life in prison. Around 34 years later, in 2019, defendant filed a petition to vacate his murder conviction pursuant to section 1172.6 (formerly section 1170.95).[2] Following an order to show cause and immediate evidentiary hearing, the trial court denied the petition, finding beyond a reasonable doubt that defendant could still be guilty of second degree murder.

On appeal, defendant argues the People failed to prove, through admissible evidence, that he was still guilty of murder under a valid legal theory. Alternatively, he contends the order denying his petition should be reversed and the matter remanded for a new hearing because he was denied his due process right to be present at the evidentiary hearing. For reasons explained, we reverse the trial court's order and remand the matter for further proceedings pursuant to section 1172.6.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We cite to section 1172.6 for ease of reference unless otherwise indicated.

II.

FACTUAL AND PROCEDURAL BACKGROUND[3]

In March 1985, defendant, who was 18 years old at the time, and his codefendants, Ray Keith, Jr. and John Robert Bogin,[4] drove from Louisiana to California for a visit. While in California, defendants had met the victim who invited them to stay at his apartment in Van Nuys.[5] Several altercations ensued between the victim and defendants, requiring police intervention.[6] The first time, the victim was arrested for assaulting a police officer. After he was released on bail, the police were again called to the victim's apartment where the parties agreed that there would be no more disturbances, and defendants would leave in the morning.

Bogin and Keith thereafter discussed stealing the victim's money and suggested that defendant distract the victim by picking a fight with him. Defendant, however, refused.[7] Keith and Bogin then went into the victim's bedroom, restrained the victim on the bed, and attempted to suffocate him with a pillow. Meanwhile, defendant searched

---

[3] A summary of the factual background is taken from defendant's statements made at his parole hearing and the probation report, which were attached as exhibits to the People's brief opposing defendant's petition for resentencing.

[4] One of the codefendant was 42 years of age and the other was 36.

[5] The victim was 36 years old.

[6] One of the altercations occurred after the victim had made sexual advances toward defendant.

[7] At the time, defendant had a cast on his arm, a leg brace on and a back brace.

3

the bedroom for the victim's wallet. During the search, defendant found a hypodermic syringe. Defendants wanted to inject the victim with what was in the syringe, but then decided to empty it and inject the victim with air bubbles to kill him. Defendant injected the victim with the empty syringe.

When neither suffocation nor the injection killed the victim, Keith and Bogin stabbed the victim in the chest multiple times. They then wrapped the victim in a blanket and put him in the trunk of the victim's vehicle intending to return to Louisiana. In route, defendants decided to dump the victim's body near Palm Springs, where it was eventually recovered. Defendants were later apprehended while driving the victim's car near the California border.

In May 1985, defendant pleaded guilty to second degree murder with the personal use of a knife (§§ 187, 12022, subdivision (b).) In return, the remaining charges were dismissed, and defendant was sentenced to 15 years to life in prison.

On January 1, 2019, Senate Bill No. 1437 became effective (2017-2018 Reg. Sess.), which amended the felony murder rule and the natural and probable consequences doctrine as it relates to murder. (See Stats. 2018, ch. 1015, § 1, subd. (f), eff. Jan. 1, 2019.) Senate Bill No. 1437 also added former section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (Former § 1170.95, subd. (a).)

4

On August 23, 2019, defendant filed a petition for resentencing pursuant to former section 1170.95, asking that his murder conviction be vacated.

After the constitutionality issue of Senate Bill No. 1437 had been resolved, on March 12, 2021, the trial court appointed conflict counsel to represent defendant.

On August 24, 2021, the People filed an opposition brief conceding that the petition had stated a prima facie case, and that the court should issue an order to show cause and hold an evidentiary hearing. Attached to the brief was a 2015 parole hearing transcript and a 1985 post-plea probation report.

On September 3, 2021, the trial court held a hearing on "Order to Show Cause Why Defendant Should Not be Resentenced." The prosecutor and defense counsel telephonically appeared for the hearing. Defense counsel informed the court that defendant was not present and in state custody. Defense counsel also noted that he had reviewed the People's brief and the supporting documentation and that the People, "in his view" had "accurately set forth the factual information in the brief as supported by, among other things, the parole hearing transcript."

The prosecutor then responded, "This is a case we may be able to resolve today, it's pretty straight forward. The first seven pages of my brief kind of outlined all the evidence and everything. Unlike some of our other cases, we do not have a lot of transcripts to deal with. This was a guilty plea, and basically the defendant pled guilty to second degree murder, and the facts show that he intended to kill, he admitted it in the parole hearing. And he also -- the facts clearly show he was a major participant in the

underlying robbery, and he personally attempted to kill the victim himself, and he admits to personally intending to kill victim by injecting him with air from a syringe in the course of the robbery. And then he also admits after the victim is stabbed and basically on the verge of death, driving him in the trunk of his car for two hours, until he died, and dumping him in the desert. [¶] So if the Court wants to hear this today to deny the petition and to find beyond a reasonable doubt that the defendant aided and abetted the murder with expressed or implied malice, and that he was a major participant in the underlying two felonies, and he acted with reckless indifference to the victim's life."

The trial court asked whether both parties stipulate that an order to show cause should issue. The court noted "[w]e are still at TRC status, an OSC hasn't issued yet. I don't get to the hearing until an OSC is issued." After both parties stipulated that an order to show cause should be issued, the trial court issued an order to show cause and asked the parties whether they were "ready to go to an immediate hearing" on this matter. Defense counsel replied "Yes." Thereafter, the entirety of the evidentiary hearing consisted of the following colloquy between the court and the parties: "THE COURT: All right. I will tell you, my tentative is to find beyond a reasonable doubt that the defendant is, in fact, guilty of murder as contemplated by our law as of January of 2019. Because the undisputed evidence that I have before me is that when the defendant himself was questioned about the murder, he admitted to shooting the victim up with air. He specifically admitted that he was trying to kill the victim. He specifically admitted to

6

other acts after shooting the person up with a hypodermic syringe with air trying to kill him. He shoved a rag in his mouth because he was trying to yell.

"Under those circumstances the Court is prepared to find that: A) he harbored a specific intent to kill. B) he was the actual killer. C) he was a major participant acting with reckless disregard.

"[DEFENSE COUNSEL]: Your Honor, I have nothing to add to that recitation of facts, however, I do want to be abundantly clear that I'm not acquiesced. I do find -- I'm not acquiesced.

"THE COURT: You are not acquiescing. You wanted to go to immediate hearing. Do you need more time to put on additional evidence?

"[DEFENSE COUNSEL]: No.

"THE COURT: Then the court adopts the tentative as the ruling, as the verdict, and the Court does find beyond a reasonable doubt that the defendant is, in fact, guilty of murder as contemplated by the murder statute as it was modified in January of 2019. The petition is denied." Defendant timely appealed.

## III.

## DISCUSSION

Defendant argues the People failed to prove beyond a reasonable doubt, through admissible evidence, that he was still guilty of second degree murder. Alternatively, he contends the order denying his petition should be reversed and the matter remanded for a new hearing because he was denied his due process right to be present at the evidentiary

hearing. The People respond that the trial court properly denied defendant's resentencing petition because he forfeited any challenge to the evidentiary claims and, in any event, the exhibits attached to the opposition brief were properly admitted into evidence. As to defendant's second claim of error, the People contend that any error resulting from defendant's absence at the hearing was harmless.

We conclude defendant has a constitutional right to be personally present at the section 1172.6 evidentiary hearing on his petition for resentencing and the violation of that right was not harmless beyond a reasonable doubt. We therefore reverse the order denying the petition and remand for the trial court to hold a new section 1172.6 evidentiary hearing on defendant's murder conviction at which defendant will either be present or provide a knowing, intelligent, and voluntary waiver of his presence. We do not reach defendant's remaining claims in light of this disposition.[8]

A. *Relevant Law*

As noted previously, effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'"

---

[8] We note, however, that the record does not contain any evidence to show the prosecutor requested the exhibits (the parole hearing transcript and the post-plea probation report) attached to the People's brief be admitted into evidence or that these documents be judicially noticed. There is also no evidence to suggest that the trial court admitted these exhibits into evidence.

(*People v. Gentile* (2020) 10 Cal.5th 830, 846-847; see Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature accomplished this by amending sections 188 and 189. Effective January 1, 2022, Senate Bill No. 775 expanded the scope of those changes to encompass, among other things, murder convictions "under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Section 189, subdivision (e), now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (§ 189, subd. (e); Stats. 2018, ch. 1015, § 3.)

9

Senate Bill No. 1437 also created a procedure for offenders previously convicted of felony murder or murder under the natural and probable consequences doctrine to seek retroactive relief if they could no longer be convicted of murder under the new law. (*People v. Gentile*, *supra*, 10 Cal.5th at p. 843; see *People v. Lewis* (2021) 11 Cal.5th 952, 959.) Under section 1172.6, such offenders may petition to have their convictions vacated and are entitled to relief if (1) the complaint or information filed against them allowed the prosecution to proceed under a felony murder or natural and probable consequences theory; (2) they were "convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder"; and (3) they "could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189." (§ 1172.6, subd. (a).)

When presented with a petition seeking relief under section 1172.6, the trial court must first determine whether the petitioner has made a prima facie case for relief. (§ 1172.6, subd. (c).) If the petitioner makes a prima facie case, the trial court must issue an order to show cause, followed by an evidentiary hearing to determine whether to recall the sentence and resentence the petitioner. (*Id*., subds. (c), (d)(1).) The People have the burden at the hearing held pursuant to section 1172.6, subdivision (d)(3) to establish that the petitioner is not entitled to resentencing by proving that the petitioner is guilty of murder under a currently valid theory. (§ 1172.6, subd. (d)(3); see *Lewis*, *supra*, 11

10

Cal.5th at p. 960.)  The parties may present additional evidence, beyond the record of conviction, for the trial court to consider in making its ruling.

In Senate Bill No. 775, the Legislature amended the language of section 1172.6, expanding the scope of the petitioning process and clarifying some of the procedural and evidentiary requirements.  (Stats. 2021, ch. 551, § 2.)  Section 1172.6 now provides that, upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner.  (§ 1172.6, subd. (b)(3).)

Effective January 1, 2022, Senate Bill No. 775 amended the law to state:  "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019. . . .  A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (Stats. 2021, ch. 551, § 2; see § 1172.6, subd. (d)(3).)

Senate Bill No. 775 also "addresse[d] what evidence a court may consider at a resentencing hearing."  (Stats. 2021, ch. 551, § 1, subd. (d).)  Senate Bill No. 775 amended the law to provide:  "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may

11

also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."[9] (Stats. 2021, ch. 551, § 2; see § 1172.6, subd. (d)(3).)

B. *Right To Be Present at Evidentiary Hearing*

A defendant's right to be personally present at critical stages of a criminal prosecution is guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution, as well as article I, section 15 of the California Constitution. (*People v. Blacksher* (2011) 52 Cal.4th 769, 798-799; accord, *People v. Simms* (2018) 23 Cal.App.5th 987, 996 (*Simms*).) However, a defendant's Sixth Amendment rights are not necessarily implicated in a postconviction context. (See *People v. Rouse* (2016) 245 Cal.App.4th 292, 298-299.) Instead, in a postconviction context, it is the right to due process which may protect rights ordinarily associated with the Sixth Amendment. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 973.) Under either scenario, "a defendant's right to be present depends on two conditions: (1) the proceeding is critical to the outcome of the case, and (2) the defendant's presence would contribute to the fairness of the

---

[9] The version of the statute that existed when the trial court decided defendants' petition stated that at the hearing held pursuant to former section 1170.95, subdivision (d)(3), "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (Former § 1170.95, subd. (d)(3).)

proceeding." (*People v. Perry* (2006) 38 Cal.4th 302, 312; accord, *Kentucky v. Stincer* (1987) 482 U.S. 730, 745.)

Sentencing and resentencing are considered critical stages at which a defendant has a right to be present. (See *People v. Doolin* (2009) 45 Cal.4th 390, 453; *People v. Simms*, *supra*, 23 Cal.App.5th at p. 996.) Courts also have held that a defendant has a right to be present at proceedings to resolve factual questions of eligibility for resentencing under section 1170.18 (*Simms*, *supra*, at p. 996), and at the section 1170.18 resentencing hearing in which the court exercises its discretionary sentencing authority (*People v. Rouse*, *supra*, 245 Cal.App.4th at p. 300).

Moreover, in *People v. Basler* (2022) 80 Cal.App.5th 46 (*Basler*), our colleagues in Division One held that a petitioner has a constitutional right to be present at the section 1172.6 evidentiary hearing. The court reached this conclusion after examining the nature of the evidentiary hearing. Relevant to the court's consideration were the statutory provisions permitting the parties to offer "'new or additional evidence'" at the evidentiary hearing, and requiring the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder under a valid theory. (*Basler*, *supra*, at pp. 58-59; see § 1172.6, subd. (d)(3).) Additionally, the Court of Appeal noted the trial court must determine, at the hearing, whether to vacate the petitioner's conviction and "'resentence the petitioner on any remaining counts *in the same manner as if the petitioner had not previously been sentenced*, provided that the new sentence, if any, is not greater than the initial sentence.'" (*Basler*, *supra*, at p. 58; see § 1172.6, subd. (d)(1).) The court

13

characterized this proceeding as "'akin to a plenary sentencing hearing' and thus a 'critical stage' in the criminal process even though it prevents imposition of a sentence greater than that originally imposed." (*Basler*, *supra*, at p. 58.)

The court also noted its holding was consistent with our Supreme Court's decision in *In re Lewis*, *supra*, 11 Cal.5th at page 973, which suggested due process requires the appointment of counsel once it has been determined that a petitioner has stated a nonfrivolous claim. (*Basler*, *supra*, 80 Cal.App.5th at pp. 58-59.) The court concluded, "So it is here, where [the petitioner] stated facts sufficient to state a prima facie case warranting an evidentiary hearing and implicating his Sixth Amendment rights attaching to critical stages in the process." (*Id*. at p. 59.)

We agree with *Basler* and find that defendant had a state and federal constitutional right to be personally present at his section 1172.6 evidentiary hearing. As in *Basler*, we are persuaded by the provisions of section 1172.6 which permit the admission of additional evidence and require the People to prove beyond a reasonable doubt and the trial court to resolve contested factual disputes regarding the defendant's guilt or innocence. (*Basler*, *supra*, 80 Cal.App.5th at pp. 58-59; see § 1172.6, subd. (d)(3).) A proceeding in which an independent factfinder resolves the question of guilt beyond a reasonable doubt, such as an evidentiary hearing pursuant to section 1172.6, subdivision (d), *is* critical and dependent on the presence of the accused. Defendant's right to be

14

present was violated when the hearing was conducted in his absence and without a knowing, intelligent, and voluntary waiver.[10]

We next determine whether the violation of defendant's right to be personally present prejudiced him and ask whether his absence was harmless beyond a reasonable doubt. (*Basler*, *supra*, 80 Cal.App.5th at p. 59; *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Nieves*, *supra*, 11 Cal.5th at pp. 508-509; *People v. Davis*, *supra*, 36 Cal.4th at p. 532; *Simms*, *supra*, 23 Cal.App.5th at p. 998 [prejudice standard for federal constitutional violation of right to be present at contested eligibility proceeding is whether appellate court can conclude beyond a reasonable doubt that the deprivation did not affect the outcome of the proceeding].) In the instant case, we cannot conclude defendant's absence was harmless beyond a reasonable doubt.

The evidentiary hearing has one central purpose: to afford the People an opportunity to prove the petitioner's guilt beyond a reasonable doubt under a theory that remains valid after the effective date of Senate Bill No. 1437. (§ 1172.6, subd. (d)(3); *Basler*, *supra*, 80 Cal.App.5th at pp. 59-60.) In this proceeding, the trial court acts as an independent factfinder to resolve disputed questions of fact regarding the petitioner's

---

[10] The defendant can waive his right to be present, but the waiver must be "'voluntary, knowing and intelligent.'" (*People v. Nieves* (2021) 11 Cal.5th 404, 508; *People v. Davis* (2005) 36 Cal.4th 510, 532 ["At a minimum, there must be some evidence that the defendant understood the right he was waiving and the consequence of doing so"; defense counsel's statement he had discussed the hearing with defendant and defendant would waive his presence was not sufficient to establish a knowing and intelligent waiver as there was no evidence counsel informed the defendant of his right to attend, nor evidence that defendant understood he would be unable to contribute to the discussion of certain evidence by absenting himself from the hearing].)

actions and mens rea in relation to the offense. (*Ibid*.) Had defendant been present, he may have chosen to testify or may have "given input to his counsel on the People's presentation and arguments, resulting in his counsel drawing different inferences from the trial evidence or doing more than submitting on the papers." (*Id*. at p. 60.) The trial court may or may not have chosen to credit such evidence, but we cannot conclude with any certainty that defendant's presence would not have affected the presentation of evidence or the outcome of the proceedings. (*People v. Cutting* (2019) 42 Cal.App.5th 344, 350; *Simms*, *supra*, 23 Cal.App.5th at p. 998.)

We further note that defendant's counsel did not indicate that he had discussed the section 1172.6 evidentiary hearing with defendant or that defendant knew he had the right to be present. Counsel did not present any waiver from defendant, instead representing to the court that defendant was in state prison custody. Nothing in the record suggests defendant expressed any desire to waive his right to be present, much less that he knowingly, intelligently and voluntarily did so. The entire purpose of the section 1172.6 "resentencing hearing was for the court to consider whether to vacate [defendant's] conviction and recall [defendant's] sentence, including by reviewing the record and taking new evidence, if offered, on the issue of [defendant's] actions and mens rea on the night in question. The question may well turn on disputed issues of fact 'about which [defendant]—as a participant in the events in question—may well have had something to say.' [Citation.]" (*Basler*, *supra*, 80 Cal.App.5th at pp. 59-60, quoting *Simms*, *supra*, 23 Cal.App.5th at p. 998.)

16

The People argue any error in defendant's absence at the evidentiary hearing was harmless beyond a reasonable doubt because at his parole hearing, defendant, who was represented by counsel, testified under oath and the evidence from "this hearing overwhelmingly established that [defendant] aided and abetted the murder with either express or implied malice." However, our review of the record shows that defendant, who was 18 years old at the time while his codefendants were considerably older, gave conflicting statements in regard to his intent. In response to questioning by the parole board of why he and his codefendants decided to kill the victim, defendant stated "It wasn't my intentions to kill." He also agreed with the parole board that the plan was to "fight him and rob him, but not kill him." He repeatedly stated that he did not want to kill the victim or that it was not his intention. He explained that he had not stabbed the victim, despite his codefendants' requests, but agreed that he had injected the victim with air in an attempt to kill him. When later asked why he injected the victim with air, defendant stated that his codefendants kept telling him to do it, that he was pressured and influenced by his codefendants, and that he was unaware of the consequences of injecting a person with air at the time. Defendant also asserted that he was "shocked" when the codefendants stabbed the victim and the victim died.

About 30 years before, defendant had informed the probation officer that he had nothing to do with the syringe or injecting the victim with the syringe and that the codefendants had injected the victim with the syringe. Defendant's responses at the parole hearing in 2015, however, may have been influenced by intervening events such as

17

the passage of time and decades of therapy. At one point, defendant stated "Well, it wasn't my intention [to kill]. . . . It took ten years to realize [that] I was involved with something like that." At another point, he asserted "I didn't think anything of it [inserting the victim with air] at the time. Now that I know that I did that, I kept telling the psych doctor . . . . I wouldn't let somebody influence me to do some stuff like that."

"[T]he eligibility issues turned on disputed issues of fact about which [defendant] – as a participant in the events in question – may well have had something to say. The trial court may, or may not, have chosen to believe what [he] might have said, if he said anything, but we cannot conclude beyond a reasonable doubt that his presence at the hearing would not have affected the outcome." (*Simms*, *supra*, 23 Cal.App.5th at p. 998.) Clearly, defendant would have spoken up when the trial court stated, in its tentative, that he was the "actual killer" and had put a rag in the victim's mouth.[11] The prosecutor never claimed defendant was the actual killer, never offered evidence of the cause of death, and never offered evidence that injecting the victim with air contributed to the victim's death. The prosecution was required to convince the court, upon admissible evidence and beyond a reasonable doubt, that defendant is guilty of murder under a valid theory. (§ 1172.6, subd. (d)(3).)

"Apart from presenting evidence, [defendant] may have given input to his counsel on the People's presentation and arguments, resulting in his counsel drawing different

---

[11] At the parole hearing, defendant stated that his codefendants put a rag in the victim's mouth to stop him from yelling, and he was told the victim died from something on the rag.

inferences from the trial evidence or doing more than submitting on the papers. In any event, we agree [defendant] is entitled to hear the People's evidence and argument on the point, then decide whether to testify and/or present additional or new mitigating evidence on his behalf." (*Basler*, 80 Cal.App.5th at p. 60.) We conclude, under the circumstances of this case, defendant's absence from the hearing was not harmless beyond a reasonable doubt.

## IV.

## DISPOSITION

The order denying defendant's petition for resentencing is reversed and the matter is remanded for the trial court to hold a new section 1172.6 evidentiary hearing on defendant's murder conviction at which defendant will either be present or provide a knowing, intelligent, and voluntary waiver of his presence.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____
J.

We concur:

MILLER _____
     Acting P. J.

FIELDS _____
     J.